UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| PETER ALLEN DAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 3:19-CV-607-HAB |
| | ) | |
| ANDREW SAUL, | ) | |
| Commissioner of the Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Plaintiff Peter Allen Day seeks review of the final decision of the Commissioner of the Social Security Administration (Commissioner) denying his application for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §405(g). Plaintiff alleges that he has been disabled since May 18, 2016, due to a variety of mental impairments, including major depressive disorder, bipolar disorder, generalized anxiety disorder, and social phobia. Because the evidence substantially supports the ALJ's decision, the Commissioner's decision will be AFFIRMED.

**A.    Procedural Background**

On August 12, 2016, the Plaintiff filed a Title II application for DIB, alleging disability beginning on May 18, 2016. (R.15.) His claim was denied initially and upon reconsideration. (*Id*.) On June 11, 2018, the Plaintiff appeared with his attorney and testified at a hearing before an administrative law judge (ALJ). (*Id*.) David D. Couch, a vocational expert, also appeared at the hearing.

On September 18, 2018, the ALJ denied the Plaintiff's application finding he was not disabled. After the Appeals counsel declined to review it, the decision became the Commissioner's final decision for purposes of judicial review. (R. 1–7.)

**B. The ALJ's Decision**

A person suffering from a disability that renders him unable to work may apply to the Social Security Administration for supplemental security income. *See* 42 U.S.C. § 1382c(a)(3)(A) (defining disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months"). To be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work, but also any other kind of gainful employment that exists in the national economy, considering his age, education, and work experience. § 1382c(a)(3)(B).

If a claimant's application is denied initially and on reconsideration, he may request a hearing before an ALJ. An ALJ conducts a five-step inquiry in deciding whether to grant or deny benefits: (1) whether the claimant is currently employed, (2) whether the claimant has a severe impairment, (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment, whether he has the residual functional capacity to perform his past relevant work, and, if not (5) whether the claimant is capable of performing any work in the national economy. *See* 20 C.F.R. § 416.920(a); *Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001).

Here, at step one, the ALJ found that Plaintiff had not been employed after the alleged disability onset date. (R. 17). At step two, the ALJ found that Plaintiff had the severe impairments

of major depressive disorder, bipolar disorder, generalized anxiety disorders and social phobia. (*Id.*) The ALJ stated that these impairments significantly limit his ability to perform basic work activities. At step three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." (*Id.*) The ALJ considered listings 12.04 (depressive, bipolar and related disorders) and 12.06 (anxiety disorders). (*Id.*) The ALJ determined that the "paragraph B" criteria were not satisfied in that Plaintiff did not have at least one extreme or two marked limitations in a broad area of functioning. (R. 18). The ALJ further determined that the evidence did not establish the "paragraph C" criteria. (R. 19).

Before moving to step four, the ALJ found that Plaintiff had the residual functional capacity (RFC) to perform a full range of work at all exertional levels as defined in 20 C.F.R. § 404.1567 with the following non-exertional limitations:

> [H]e can understand, remember, and carry out simple routine, repetitive, unskilled tasks. He can have occasional interaction with supervisors and superficial interaction with coworkers and the general public. He is limited to low stress work that is no work at an assembly line rate pace and no work with an hourly or less quota requirement. He is limited to work where change is only introduced gradually.

(R. 19).

Based on the above RFC and his hypothetical questions to the vocational expert, the ALJ found Plaintiff to be able to perform his past relevant work as a janitor and alternatively, capable of making a successful adjustment to other work that exists in significant numbers in the national economy, including a vacuum cleaner operator, a floor waxer, and lab equipment cleaner. Thus, the ALJ found that Plaintiff was not disabled as defined in the Social Security Act.

### C.  Standard of Review

The decision of the ALJ is the final decision of the Commissioner when the Appeals Council denies a request for review. *Liskowitz v. Astrue*, 559 F.3d 736, 739 (7th Cir. 2009). The Social Security Act establishes that the Commissioner's findings as to any fact are conclusive if supported by substantial evidence. *See Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995). Thus, the Court will affirm the Commissioner's finding of fact and denial of disability benefits if substantial evidence supports them. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2009). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

It is the duty of the ALJ to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Richardson*, 402 U.S. at 399–400. The reviewing court reviews the entire record; however, it does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *See Diaz*, 55 F.3d at 608. The court will "conduct a critical review of the evidence," considering both the evidence that supports, as well as the evidence that detracts from, the Commissioner's decision, and "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (internal quotations omitted).

When an ALJ recommends the denial of benefits, the ALJ must first "provide a logical bridge between the evidence and his conclusions." *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009) (internal quotation marks and citation omitted). Though the ALJ is not required to address every piece of evidence or testimony presented, "as with any well-reasoned decision, the ALJ must rest its denial of benefits on adequate evidence contained in the record and must explain why

contrary evidence does not persuade." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). However, if substantial evidence supports the ALJ's determination, the decision must be affirmed even if "reasonable minds could differ concerning whether [the claimant] is disabled." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

### D. Analysis

Plaintiff raises three issues on appeal. First, he argues that the ALJ failed to properly evaluate his bipolar and anxiety disorders under the listings. Second, Plaintiff argues that the ALJ erred in evaluating the medical opinion evidence. Finally, he argues that the vocational findings are founded upon legal error and are not supported by substantial evidence. (ECF No. 15 at 5). After a thorough review of the ALJ's decision and the record, the Court concludes that Plaintiff's arguments are not well taken.

#### 1. Listing Evaluation

In considering whether a claimant's condition meets or equals a listed impairment, "an ALJ must discuss the listing by name and offer more than a perfunctory analysis of the listing." *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004). And as with all analyses by the ALJ, the ALJ must "build a logical bridge from the evidence to [ ] conclusion." *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015). To demonstrate that a listing is met or equaled, the claimant bears the burden of showing that his impairment satisfies "all of the various criteria specified in the listing." *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006) (citation omitted).

As set out above, the ALJ concluded that Plaintiff's conditions did not meet the criteria of Listings 12.04 or 12.06. Both Listings contain three sets of criteria set out in Paragraphs A, B, and C, and may be satisfied by meeting the requirements of Paragraph A, along with either Paragraph B or Paragraph C (both Listings recite the same criteria in Paragraphs B and C). 20 C.F.R. Pt. 404,

Subpt. P, App. 1. Paragraph B of both Listings requires an "extreme" limitation in at least one of the four functional areas or a "marked" limitation in at least two areas. *Id.* Here, the ALJ found Plaintiff has moderate limitations in all four areas, and thus, "the 'paragraph B' criteria are not satisfied." (R. 19).

The "Paragraph C" criteria for the relevant listings under 12.00 are used "to evaluate mental disorders that are 'serious and persistent'" while recognizing that "mental health interventions may control the more obvious symptoms and signs of [the claimant's] mental disorder." 20 C.F.R. Pt. 404, Subpt. P, App. 1 §12.00(G)(1). The ALJ considered the paragraph C criteria but concluded that the evidence fails to establish the presence of those criteria. (R. 19)

   a. **Paragraph B Criteria**

Plaintiff contends that the ALJ should have found that he had "marked limitations" as opposed to moderate ones in each of the paragraph B criteria. Alternatively, he contends that the ALJ should have found he satisfied the Paragraph C criteria.

Turning first to the Plaintiff's assertion that the ALJ erred in finding no "marked limitations" in any of the four areas, the Court concludes that substantial evidence supported the ALJ's decision.  "Marked" restrictions or difficulties are serious limitations of the ability to function "independently, appropriately, effectively, and on a sustained basis" in a given area, representing a four on a five-point scale, with one being no limitation and five being "extreme limitation" (essentially not functioning at all) in a given area. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(F)(2). Here, the ALJ considered the medical evidence as a whole along with the Plaintiff's own statements of his limitations to reach his conclusion.

For instance, the ALJ found moderate limitations in understanding, remembering, or applying information, noting Plaintiff's own reported difficulties with memory, completing tasks,

and understanding as well as the consultative examination showing below average memory and cognitive capacity. (R. 18, 232–38, 610–11.) The ALJ contrasted this evidence with: (1) Plaintiff's failure to display looseness of thought or evidence of psychotic symptoms during the consultative examination (R. 610–11); (2) Plaintiff's mental status examinations describing normal findings of orientation in three spheres, intact memory, and the absence of hallucinations and delusions (R. 522. 524, 528, 623, 626, 629, 634, 636, 638, 647, 649, 651, 660, 662, 681, 684, 695, 698, 707); and (3) treating physicians' notes that Plaintiff did not demonstrate any cognitive deficits or have any difficulty answering questions.

The ALJ also found moderate limitation in interacting with others. The ALJ cited Plaintiff's reports of auditory and visual hallucinations, his reported difficulties with talking and getting along with others, withdrawing from people when feeling stressed, pacing and talking to himself. (R. 231–40.) Additionally, the ALJ considered Plaintiff's testimony that he has a fear of being around people and in large crowds. (R. 45-46, 231–40.) However, the ALJ noted that while Plaintiff testified to hearing voices, he also knew those voices were not real and he reported that the voices were not significantly impacting him. (R. 18, 38.) He was clean and neat in his personal appearance and hygiene, alert and cooperative. (R. 490–91, 493–94, 496, 619.) Examinations considered by the ALJ showed that Plaintiff's affect and mood were generally within normal limits on medication, with positive affect and upbeat and improved mood.

The ALJ found moderate limitations in CPP (concentrating, persisting or maintaining pace). Again, the ALJ cited Plaintiff's reports of auditory and visual hallucinations as well as his difficulties with completing tasks and concentration. Plaintiff's therapist, however, did not note any findings of delusions, responses to internal or external stimuli, or distractibility during treatment sessions. (R. 490, 493–94, 496–97, 619–21.) Plaintiff's mental status examinations

7

routinely documented normal attention, concentration, memory, orientation and the absence of side effects from medication. (R. 522, 524, 528, 623, 626, 629, 634, 636, 638, 647, 649, 651, 662, 681, 684, 695, 698, 707.) The ALJ also cited Plaintiff's ability to participate in work activity despite his reports of hallucination, based on his report that he keeps busy by working on a farm taking care of horses. (R. 494, 701, 704.)

Finally, the ALJ found that Plaintiff was moderately limited in the functional area of adapting or managing himself, which refers to "the abilities to regulate emotions, control behavior and maintain well-being in a work setting." 20 C.F.R. Pt. 404, Subpt. P, App. 1 §12.00 (E)(4). The ALJ noted that Plaintiff reported no problems or difficulty with personal care with one exception; he had difficulty urinating when he heard voices. (R. 19). The ALJ observed poor dentition but that Plaintiff was neat and clean, alert, ambulatory, and cooperative. (R. 522, 609–611.) The ALJ also credited his testimony that he lives with his mother and sister, does not like to go out and no longer drives. Again, the ALJ contrasted Plaintiff's self-reported limitations with those from his mental status examinations which routinely showed normal findings without suicidal or homicidal ideations, no mood swings, no hallucinations, and no delusions. (R. 522, 524, 528, 623, 626, 629, 634, 636, 638, 647, 649, 651, 660, 662, 681, 684, 695, 698, 707.)

Plaintiff asserts that the ALJ made a series of errors in his determinations such as: (1) relying on portions of the record "that supported his conclusion and discounted the probative value of parts he did not like" (ECF No. 15 at 7); (2) considering his functioning during mental health appointments as "reflective of his ability to function on a sustained basis in the workplace" (*Id.* at 8); (3) relying on irrelevant facts and evidence (*Id.*); (4) failing to mention third party reports that Plaintiff had difficulty completing paperwork, his ninth grade education in a remedial curriculum, or the recommendation that Plaintiff would need a payee due to cognitive skills deficits (R. 225,

605, 611, 615); (5) engaging in a lopsided weighing of the evidence (ECF No. 15 at 9); (6) minimizing the impact of his hallucinations and "callously dismissing" them (*Id.*); and (7) failing to consider Plaintiff's lack of insight into his own illness (*Id.* at 9–10, 12.)

With small exception, what each of the Plaintiff's arguments challenges is the weight the ALJ accorded to the various pieces of medical and evaluative evidence in determining that Plaintiff had moderate limitations in all four functioning areas. The ALJ properly summarized the treatment records in his decision, including summarizing much of the same evidence that Plaintiff urges the ALJ should reevaluate. Moreover, to the extent the ALJ chose one line of evidence over another, it does not require remand. Indeed, "when there is substantial evidence pointing in both directions, an ALJ does not cherry-pick when [he] embraces one of two possible positions." *Mosley v. Berryhill,* No. 3:15-CV-615-PPS-MGG, 2017 WL 3016386, at *5 (N.D. Ind. July 17, 2017).

Here, for instance, with respect to the discussion of hallucinations, the ALJ did not rely solely on Plaintiff's own discussion of his hallucinations. He cited medical evidence confirming what Plaintiff reported — that Plaintiff only heard voices on an intermittent basis, they did not significantly impact him, and during therapeutic sessions he remained verbal and engaged. (R. 18) Indeed, the treatment providers confirmed Plaintiff experienced hallucinations but stated that Plaintiff was capable of interacting despite them. (R. 490–91, 493–94, 496, 619). Plaintiff focuses on other evidence which he contends points the other way, and asserts that he did not have insight into his illness to properly communicate how his hallucinations affected him.[1] However, the ALJ weighed and considered all the evidence including relevant medical treatment documentation and Plaintiff's self-reported issues. He built a logical bridge between the evidence and his conclusions.

---

[1] Plaintiff asserts after the fact that when the ALJ questioned him during the hearing and inquired if he knew the voices were not real, he answered "yes," but that was only out of embarrassment from his condition. (ECF No. 15 at 9).

To the extent, Plaintiff's arguments relate to omitted discussion by the ALJ regarding certain specific evidence, again, the Court finds no error requiring remand. Plaintiff asserts that the ALJ failed to discuss the third party function reports offered by his mother and sister in his evaluation of the listings. However, the ALJ specifically addressed these reports elsewhere in his decision and indicated that he gave them "little weight as they are lay opinions based upon casual observation, rather than objective medical and testing." (R. 22). The ALJ is not required to discuss and expressly reference every piece of evidence in the record "nor is he required to place his discussion of the evidence in the section of the decision regarding the listings or to repeat his factual analysis." *Wright v. Astrue,* No. 2:11-cv-357-PRC, 2012 WL 3818219, at *8 (N.D.Ind. Sept. 4, 2012). While there may have been bits of evidence that the ALJ opted not to include in his discussion of the listings or in his decision at all, the ALJ thoroughly considered the issues and substantial evidence supported his determinations. *Hays v. Berryhill*, 2:18-cv-00129-JVB-JEM, 2019 WL 3183619, at *4 (N.D.Ind. July 15, 2019) ("Although Plaintiff may not agree with the ALJ's treatment of the evidence, the ALJ did not cherry pick or ignore evidence.").

In sum, the ALJ discussed each of the Paragraph B criteria individually, cited to record evidence supporting a moderate limitation in each area rather than something more severe, and built a bridge between that evidence and his ultimate conclusions. The Court does not engage in deciding which facts the ALJ should have chosen, reweighing the evidence or substituting its own judgment for the ALJ. Accordingly, the Court finds that the ALJ did not err in his determination that the Paragraph B criteria were not met.

### b. Paragraph C Criteria

Turning next to the Plaintiff's assertion that the ALJ erred in not finding that he met the Paragraph C criteria, Plaintiff had the burden of showing his mental disorder was "serious and

persistent." This requires the Plaintiff to demonstrate a medically documented history of the existence of the disorder over a period of 2 years and evidence that shows that the individual relies, on an ongoing basis, upon medical treatment and/or mental health therapy to diminish the symptoms and signs of the mental disorder, but that despite the diminished symptoms and signs, the individual has achieved only marginal adjustment, meaning he has minimal capacity to adapt to changes in his environment. 20 C.F.R. Pt. 404, Subpt. P, App 1 §12.00. Translated differently, the Plaintiff must demonstrate that despite diminished symptoms from ongoing treatment, his adaptation to the requirements of daily life was fragile, "for example, you have become unable to function outside of your home or a more restrictive setting, without substantial psychosocial reports." *Id.* At §12.00G(2)(b)-(c).

Here, the ALJ considered the paragraph C criteria and explained the evidence demonstrating where Plaintiff fell short of the criteria. The ALJ cited evidence of Plaintiff's ongoing treatment including his past hospitalizations and current outpatient care, but he went on to explain as follows:

> The claimant did not indicate any difficulties with hygiene or self-care activities, and did not indicate that he has trouble eating, dressing, taking medications, or keeping appointments. Furthermore the evidence does not reveal the claimant has participated in any work programs or required the use of a job coach or supervisor, received comprehensive 24/7 wrap around mental health services, resided in a halfway house or in another supportive living arrangement, or required assistance from mental health workers to meet physical needs.

(R. 19.) From this evidence, the ALJ determined an absence of Paragraph C criteria.

Plaintiff argues that the ALJ failed to specifically identify the Paragraph C criteria and that he failed to recognize Plaintiff's ongoing medical treatment. Additionally, he argues that the ALJ omitted discussion of reports from Plaintiff's sister as to his need for assistance and that this evidence supports his view that the ALJ should have found his adjustment to daily life was fragile.

Plaintiff is correct that the ALJ did not specifically identify the Paragraph C criteria in terms of the regulatory framework. Yet, the ALJ's discussion clearly demonstrates his knowledge of the criteria and his application of the evidentiary record to the criteria. The ALJ acknowledged Plaintiff's ongoing mental health treatment, citing to exhibits 4F, 9F, 10F and 11F, all of which reference his treatment at the Swanson Center and with Sajja Babu, M.D. He further analyzed evidence demonstrating how Plaintiff functioned outside the home while undergoing mental health treatment. Based on this evidence, the ALJ reasonably determined that the Paragraph C criteria was not met.

Nevertheless, Plaintiff argues that the ALJ omitted Dr. Babu's opinions and the third-party reports from Plaintiff's mother and sister which, he contends, would support a conclusion that he met the Paragraph C criteria. However, as noted above and as will be noted in the next section, the ALJ appropriately considered and weighed this evidence and that weighing of the evidence will not be disturbed by the Court. Accordingly, the Court finds no error in the ALJ's determination that the Paragraph C criteria were not met by the evidence.

### 2. Medical Opinion Evidence

The residual functional capacity (RFC) measures what work-related activities a claimant can perform despite his limitations. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). It is the most the claimant can still do. *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(1)). A claimant's RFC must be based upon the medical evidence in the record and other evidence, such as testimony by the claimant or his friends and family. 20 C.F.R. § 404.1545(a)(3). In making a determination, the ALJ must decide which treating and examining doctors' opinions should receive weight and explain the reasons for that finding. 20 C.F.R. § 404.1527. Additionally, the ALJ's RFC assessment must contain a narrative discussion describing how the evidence supports the ALJ's conclusions and explaining why any medical source opinion

was not adopted if the ALJ's RFC assessment conflicts with such an opinion. SSR 96–8p, 1996 WL 374184, at **5, 7; *accord Briscoe v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005).

On appeal, Plaintiff argues that the ALJ's RFC determination was not supported by substantial evidence because the ALJ failed to provide adequate reasons as to the weight he attributed to the treating physician and the State agency medical consultants. The Commissioner defends the ALJ's decision, arguing that the ALJ adequately explained the reasons for the weight he assigned to the opinions.

The opinions at issue are those of treating physician Dr. Babu and State agency psychological consultants Ann Lovko, Ph.D., and Joelle Larson, Ph.D. The ALJ afforded partial weight to Dr. Babu's findings and great weight to the opinions of the State agency consultants. Plaintiff asserts that the decision to afford the treating physician only partial weight while crediting the non-treating State agency consultants' opinions requires remand because it is unsupported by substantial evidence and the ALJ did not properly analyze the medical opinions.

With respect to Dr. Babu, the ALJ found Dr. Babu's opinion that the Plaintiff has difficulty dealing with others, can follow work rules as long as they are simple and straightforward, could understand, remember, and carry out simple instructions, and can respond appropriately to usual work situations all supported by the "overall evidence showing that the claimant had ability to pay attention and concentrate, was oriented in three spheres, had intact memory, had no suicidal ideations, had no mood swings, had no hallucinations, had no delusions, and had no side effects from medications noted." (R. 22). The ALJ contrasted this determination with Dr. Babu's findings that the Plaintiff cannot behave in an emotionally stable manner or that he is not capable of sustaining work on a continuing basis. The ALJ found these latter opinions unsupported by the medical evidence showing Plaintiff's affect and mood "were generally within normal limits on

medication, with positive affect and upbeat and improved mood." (R. 22). The ALJ also found Dr. Babu's statements contradicted by Plaintiff's own report that he was working on a farm taking care of horses, "demonstrating the claimant's ability to participate in work activity despite his reported hallucinations." (*Id.*)

The ALJ also assigned "little weight" to Dr. Babu's opinions regarding the Plaintiff's inability to function and his determination that Plaintiff was "disabled." (R. 22). The ALJ found that these statements were not supported by Dr. Babu's own treatment notes indicating that the Plaintiff's "sobriety, current medications, and increased dosages were helping the claimant to manage his symptoms." (*Id.*)

With respect to the psychological consultants, the ALJ assigned their opinions "great weight" finding that their conclusions that Plaintiff can understand, remember, and carry-out unskilled tasks in a lower stress setting not requiring significant interaction were reinforced by the mental status examinations. (R. 21–2). He further determined that the consultants' findings that Plaintiff could "relate on a superficial basis on an ongoing basis with co-workers and supervisors, can attend to task for sufficient periods of time to complete tasks, and can manage the stresses involved with work" were also supported in the medical evidence. (*Id.*).

Plaintiff challenges the ALJ's evaluation of Dr. Babu's opinion asserting that it was entitled to controlling weight because it was well-supported and consistent with the other evidence in the record. However, the ALJ pointed to contradictory evidence in the record when determining the weight to assign to the treating physician. Nevertheless, Plaintiff insists that the ALJ's refusal to give Dr. Babu controlling weight was arbitrary because he merely listed facts that he believed contrasted with aspects of Dr. Babu's opinion. That is simply not an accurate recitation of the record. The ALJ set forth several treatment records that specifically contrasted with Dr. Babu's

opinion that Plaintiff was unable to behave in an emotionally stable manner and could not sustain fulltime work. (R. 22). Multiple treatment records identified by the ALJ showed consistently normal mood, affect, concentration, attention and memory. (*Id.*)

That said, the Plaintiff claims that the ALJ improperly equated his part-time work caring for horses as evidence that he could work fulltime. Again, however, that is not accurate. The record is clear that the ALJ viewed Plaintiff's part-time work as one factor among others he documented that weakened Plaintiff's claim of severe disability. *See Bailey v. Astrue*, No. 1:09-cv-43, 2009 WL 5176156, at *12–13 (N.D. Ind. Dec. 21, 2009) (finding that the ALJ did not rely exclusively on the plaintiff's successful part-time work but instead determined "the ALJ saw his successful part-time work as one factor undercutting his claim of severe disability").

As for the psychological consultants, Plaintiff urges that the ALJ improperly afforded their opinions greater weight than the treating physicians. However, there is not much teeth in this argument as an ALJ may assign greater weight to non-examining physicians when the ALJ finds they are more consistent with the record as a whole. *Hall ex rel. Hall v. Astrue,* 489 F.App'x 956, 958 (7th Cir. 2012).

All in all, the Court finds that the ALJ met his burden to explain which opinions he accepted and which he discounted and why. An ALJ is "not required to rely entirely on a particular physician's opinion or choose between the opinions of any of the claimant's physicians" in making his RFC determination. *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007) (citing *Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995)). The ALJ's responsibility is to "consider the entire record." *Id.* As explained above, the ALJ articulated his reasons for the weight he assigned to the State agency consultant's conclusions as well as the conclusions of the treating physician. In doing so, the ALJ cannot be accused of ignoring an entire line of evidence or selecting and discussing only

the evidence that favored his ultimate conclusion. Accordingly, this Court is left with the prospect of inappropriately reweighing evidence, resolving conflicts, deciding questions of credibility, or substituting its own judgment for that of the Commissioner. Under the deferential standard of review, Plaintiff has not identified grounds for remand.

### 3. VE's Testimony

Finally, Plaintiff asserts that based on the other issues he has identified, the ALJ's hypothetical to the vocational expert was flawed. Because the Court finds that the ALJ's conclusions above were supported by substantial evidence, the argument that the ALJ erred in relying upon the vocational expert's testimony that Plaintiff was not disabled is not well-taken.

The RFC accounted for moderate limitations in CPP by identifying that Plaintiff was limited to "no work at an assembly line rate pace and no work with an hourly or less quota requirement." *Cihlar v. Berryhill*, 706 F. App'x 881, 882 (7th Cir. 2017) (administrative law judge's reference to "no production or pace rate work" adequately reflected plaintiff's moderate limitations in concentration, persistence and pace). Likewise, it accommodated Plaintiff's complaints of hearing voices, social anxiety and included specific limitations on pace, interaction and environmental changes. Thus, the ALJ developed an RFC based on specific facts from the record and explained each finding. The Court finds no basis for remand.

## CONCLUSION

For the reasons stated above, the Court AFFIRMS the decision of the Commissioner.

SO ORDERED on June 2, 2020.

                                       s/ *Holly A. Brady*
                                       JUDGE HOLLY A. BRADY
                                       UNITED STATES DISTRICT COURT

!